UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

SAMMY LEE CASEY-EL, JESSIE DORRIS, )
TERRANCE BEAL, MARSHALL EGSON, )
CEMOND BROOKS, GARY W. WILSON, )
GEORGE BANKS, MARCUS SMITH )
and KEITH McFERREN, )
 )
     Plaintiff, )
 )
    v. ) No. 1:05-cv-148-RWS
 )
UNKNOWN JORDAN, UNKNOWN )
MAUGENDHI, UNKNOWN PUGH, )
UNKNOWN GRIPPO and PRIVATE )
CONTRACTORS, )
 )
     Defendants. )

## ORDER AND MEMORANDUM

This matter is before the Court upon the application of plaintiff Sammy Lee Casey-El, a pretrial detainee at Cape Girardeau County Jail, located in Jackson, Missouri, for leave to commence this action without payment of the required filing fee. For the reasons stated below, the Court finds that the applicant does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $0.00. *See* 28 U.S.C. § 1915(b)(1).

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1) a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account; or (2) the average monthly balance in the prisoner's account for the prior six month period. *See* 28 U.S.C. § 1915(b)(1). After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. *See* 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Applicant has submitted an affidavit and a certified copy of his prison account statement for the six month period immediately preceding the submission of his complaint. *See* 28 U.S.C. § 1915(a)(1),(2). A review of applicant's account statement indicates an average monthly deposit of $0.00, and an average monthly account balance of $0.00. Applicant has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $0.00.

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court may dismiss a complaint filed in forma pauperis at any time if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. An action is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief may be granted if it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Jackson Sawmill Co. v. United States*, 580 F.2d 302, 306 (8th Cir. 1978), *cert. denied*, 439 U.S. 1070 (1979).

In reviewing a pro se complaint under § 1915(e)(2)(B), the Court must give the complaint the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court must also weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless. *Denton v. Hernandez*, 504 U.S. 25, 31-32 (1992); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183 (1984).

## The complaint[1]

Plaintiff seeks monetary, declaratory and injunctive relief pursuant to 42 U.S.C. § 1983. Named as defendants are Unknown Jordan (Sheriff), Unknown Maugendhi (Captain), Unknown Pugh (Officer) and Unknown Grippo (Officer).

Plaintiff claims that the law library is inadequate. He also asserts numerous conditions of confinement claims that may be categorized as follows: health and safety issues (lack of ventilation; food that is cold, insufficient, and violative of religious dietary requirements; lack of toilet paper and razors, and having to pay for same; mattresses that are ragged and torn; restricted shower times; overcrowding; lack of medical, dental and mental health care, and having to pay for same; and lack of exercise equipment); lack of citizen review committee; racial composition of staff and detainees; hours on lockdown and in the pod; mass punishments; excessive cost of canteen items lack of privacy; and visitation rights. Plaintiff also claims that inmates are tazed without justification, that there is a lack of programs to accommodate juveniles seventeen to twenty-one years old and that corrections officer give cigarettes to an inmate with AIDS in exchange for his assaulting other inmates.

## Discussion [2]

The Court must address the following threshold issues before considering plaintiff's allegations: 1) whether any of the defendants may be found liable given the lack of specific allegations against any defendant and 2) whether some of plaintiff's allegations must be dismissed because they are assertions of the rights of third parties rather than of plaintiff himself.

### A. Personal involvement.

---

[1]The Court notes that, although plaintiffs Jessie Dorris, Terrance Beal, Marshall Egson, Cemond Brooks, Gary W. Wilson, George Banks, Marcus Smith and Keith McFerren signed the complaint, only plaintiff Casey-El has submitted application to proceed in forma pauperis (CJA Form 23) and a certified copy of his prison account statement. Accordingly, the Court will strike as party-plaintiffs Jessie Dorris, Terrance Beal, Marshall Egson, Cemond Brooks, Gary W. Wilson, George Banks, Marcus Smith and Keith McFerren.

[2]As a preliminary matter, the Court will dismiss plaintiff's complaint against defendants "private contractors." Defendants "private contractors" are improper defendants because they are unidentifiable and indeterminate in number. *See Estate of Rosenberg v. Crandell*, 56 F.3d 35 37 (8th Cir. 1995) (suit naming "various other John Does to be named when identified" not permissible).

The Court notes that in only one of plaintiff's claims does he allege specific facts as to how a named defendant violated his rights: plaintiff alleges that defendant Unknown Pugh passes out food trays with detainees' room numbers on them, such that it would be easy to poison an inmate. When referring to other claims, plaintiff generally ascribes the alleged constitutional violation to no one at all or, at most, to "prison officials" or "the work staff." *See Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff). Accordingly, the Court will dismiss defendants Unknown Maugendhi and Unknown Grippo because plaintiff has failed to allege that either of these defendants was personally involved in or directly responsible for the incidents that injured him.

The question then arises whether defendant Jordan may be held liable for the alleged violations of plaintiff's constitutional rights. Clearly, he may not be held liable on the basis of his status as the Cape Girardeau County Sheriff. *See Glick v. Sargent*, 696 F.2d 413, 414-15 (8th Cir. 1983) (per curiam) (respondeat superior theory inapplicable in § 1983 suits). However, "chief executive officers of penal institutions, such as '[a] prison warden can be held liable for policy decisions which create unconstitutional conditions.'" *Reutcke v. Dahm*, 707 F.Supp. 1121, 1134 (D.Neb.1988) (quoting *Martin,* 780 F.2d at 1338; *Ouzts v. Cummins,* 825 F.2d 1276, 1277 (8th Cir. 1987) (per curiam). Similarly, the Cape Girardeau County Sheriff may be held liable for policy decisions that create unconstitutional conditions. The Court cannot discount the possibility that defendant Jordan was responsible for the policy decisions that created the conditions alleged by plaintiff to be unconstitutional. *See id.* Because defendant's role is unknown, the Court finds that he may be a proper defendant in this matter. Accordingly, the Court will consider plaintiff's claims as to defendants Jordan and Pugh.

B.     **Asserting the legal rights of third parties.**

To the extent that plaintiff seeks to litigate the rights of other inmates, the general rule is that a litigant must assert his own legal rights and cannot assert the legal rights of a third party. *See U. S. v. Raines*, 362 U.S. 17, 22-23, 80 S.Ct. 519 (1960); *Tileston v. Ullman*, 318 U.S. 44, 46, 63 S.Ct. 493 (1943). Plaintiff has no standing to assert the constitutional rights of other prisoners. *Id*. The following claims must be dismissed because plaintiff is asserting not his own legal rights but those of third parties: tazing[3]; lack of programs for juveniles; and corrections officers' giving cigarettes to an inmate with AIDS in exchange for his assaulting other inmates.

## C. Lack of an adequate law library.

Plaintiff claims that the law library is inadequate and that detainees do not have meaningful access to the courts because they cannot do their research. Such allegations fail to state a denial of access to the courts claim because there is no indication that plaintiff has suffered actual prejudice to a non-frivolous case. *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 2180 (1996). Accordingly, plaintiff's claim as to this issue should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

## D. Conditions of confinement claims.

Because plaintiff's claims arose while he was a pretrial detainee, they are analyzed under the due process clause of the Fifth and Fourteenth Amendments rather than under the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 537, 99 S.Ct. 1861, 1873 (1979); *see also Owens*

---

[3]The Court notes that, in identifying the relief sought, plaintiff indicated a desire to certify this matter as a class action as to the issue of tazing. As stated, with respect to this issue, plaintiff attempts solely to assert the rights of third-parties because he does not allege that he has ever been tazed. He cites one instance of tazing of which he alleges personal knowledge and one instance of which he alleges only hearsay knowledge. Thus, even if the issue of tazing were to go forward, plaintiff has not satisfied the prerequisites to maintaining a class action as to the issue. *See* FED. R. CIV. P. 23 (a) and (b). Specifically, the numerosity requirement is not met because the class of inmates that have been tazed is not so large as to render joinder of its members impractical; the commonality requirement is not met because incidents of tazing would inevitably be fact-specific; the claims of plaintiff are not "typical" nor is plaintiff an adequate representative of such a class because he has not alleged that he has been tazed. *See* FED. R. CIV. P. 23 (a). Further, the Court finds that certifying this issue as a class action is not "superior to other methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23 (b)(3). As such, the Court determines that this action shall not be maintained as a class action.

5

*v. Scott County Jail*, 328 F.3d 1026 (8th Cir. 2003) (applying Eighth Amendment "deliberate indifference" standard to pretrial detention to determine if it is unconstitutionally punitive). For the conditions and restrictions placed upon plaintiff to violate his due process rights, they must constitute punishment. *Cf. id.* at 536-39 (condition of pretrial detention that is reasonably related to legitimate government interests does not amount to punishment). Further, the Eighth Circuit has made it clear that conditions within a penal institution which are unconstitutional for convicted persons under Eighth Amendment review are likewise an abridgement of the due process guarantees afforded unconvicted persons. *Campbell v. Cauthron*, 623 F.2d 503, 505 (8th Cir. 1980). Accordingly, the Court applies "the identical deliberate-indifference standard as that applied to conditions-of-confinement claims made by convicts." *Crow v. Montgomery*, 403 F.3d 598, 601 (8th Cir. 2005) (citations omitted).

**1.     Health and safety issues.**

Plaintiff alleges that cells have no air ventilation and that this problem is particularly acute because they are on lockdown from 7:00 A. M. to 10:00 A. M. and from "after 12:00 lunch" until 4:00 P. M. Plaintiff also alleges that the pods are always cold and that inmates are not allowed to have any "termos wears or T-shirts." At this early stage of review, the Court concludes that inadequate ventilation and exposure to extremes of temperature may constitute threatened and actual health hazards that may violate plaintiff's constitutional rights. Accordingly, plaintiff's allegations as to inadequate ventilation and cold pods survive review under § 1915(e)(2)(B) and should not be dismissed at this time.

Plaintiff alleges that the food provided by the jail is cold most of the time, is insufficient and is violative of religious dietary restrictions. He alleges that there is no coffee at breakfast and no honey. Plaintiff states that the food is never 100% chicken, beef or turkey but is always mixed or ground-up food. He states that pork by-products are put on his tray - such as gelatin or pudding - which violates his religious dietary restrictions. He further alleges that defendant Pugh

6

passes out food trays that have the detainees' room numbers on them, such that it would be easy to poison a detainee.

Prison officials must provide a nutritionally adequate diet. *Divers v. Dep't of Corrections*, 921 F.2d 191, 194 (8th Cir. 1990). While plaintiff's allegations as to lack of coffee and honey do not state a claim for deliberate indifference, plaintiff should be given the opportunity to show that the diet provided is unwholesome and insufficient to maintain health. *Id.* (citing *Campbell*, 623 F.2d at 508). Plaintiff should also be given the opportunity to show that the gelatin or pudding served to him contains pork products and, thus, is violative of religious dietary requirements.

Plaintiff's claim as to defendant Pugh is too speculative to warrant relief. Plaintiff does not allege that his or anyone else's food has been deliberately contaminated or that he or anyone else has been poisoned because the food trays have the detainees' room numbers on them. Plaintiff makes no other specific allegations against defendant Pugh. Accordingly, plaintiff's claim against defendant Pugh does not survive review under 1915(e)(2)(B) and should be dismissed.

Plaintiff alleges that prison officials give detainees one roll of toilet paper a week and charge fifty cents a roll for toilet paper and ten dollars for shaving razors. Plaintiff also alleges that mattresses at the jail are "ragly" and "tore up." The State owes a duty under the due process clause to provide pretrial detainees with basic human needs during their confinement. These basic human needs include the regular provision of razors and toilet paper and of a mattress that is not ragged and torn. Denial of such items "constitutes a denial of personal hygiene and sanitary living conditions." *See Atkins v. County of Orange*, 372 F.Supp.2d 377 (S.D.N.Y. 2005) (collecting cases). Accordingly, plaintiff's allegations as to the lack of personal hygiene items, including toilet paper and razors, and lack of a mattress that is not ragged and torn survive review under § 1915(e)(2)(B) and should not be dismissed at this time.

Plaintiff asserts that shower time is restricted in that showers may not be taken before 6:00 A. M., and may not be taken after 6:30 - 7:00 A. M. and may not be taken on Sundays. Plaintiff does not indicate that he has been denied showers, only that the times during which showers may be

taken is restricted. There is no allegation that plaintiff has suffered any harm except inconvenience. As such, plaintiff has failed to state a claim for violation of his constitutional rights, and this claim should be dismissed pursuant to § 1915(e)(2)(B).

Plaintiff alleges that the jail is overcrowded and that, as a result, conditions are unsanitary. Specifically, plaintiff alleges that three-to-six people sleep in a pod with one open toilet for them to use. In *Campbell v. Cauthron, supra*, the Eighth Circuit found that jail overcrowding violated the due-process rights of pretrial detainees. *Campbell,* 623 F.2d at 506-07. In *Campbell*, the Court determined that, when detainees were held for a week or less, and confined to their cells more than sixteen hours per day, the maximum number of inmates to a 130-to-154 square foot cell would be four (a minimum of 32.5 square feet each); for those held longer than one week, the maximum would be three (43.3 square feet). *Id.* at 507. Plaintiff should be given the opportunity to show that the overcrowding of which he complains evidences a violation of his due process rights. Accordingly, plaintiff's complaint as to this issue survives review under § 1915(e)(2)(B) and should not be dismissed at this time.

Plaintiff alleges that medical and dental problems are never addressed "under emergency situation" and that they must pay to see a doctor and for aspirin. Additionally, plaintiff alleges that there are no caseworkers or social workers to address their psychological or sociological problems. While the Court would concern itself with specific allegations of deliberate indifference to serious medical, dental and mental health care needs, plaintiff's claims are insufficient to state such a claim under § 1983. *See Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976) (To succeed on a claim for inadequate medical treatment under 42 U.S.C. § 1983, plaintiff must show that defendant was deliberately indifferent to his serious medical needs.). Plaintiff does not allege that he was denied needed care because of inability to pay for a doctor visit or for aspirin. Plaintiff's allegations are conclusory and identify no serious medical, dental or mental health care needs to which defendant was deliberately indifferent. Accordingly, plaintiff's complaint as to this issue does not survive review under § 1915(e)(2)(B) and should be dismissed.

Plaintiff alleges that there is no gym equipment either inside the jail or in the yard, which, he states, consists of a forty-by-fifty-foot court in which people are allowed to walk for ten-to-twenty minutes at a time. To prevail on a claim alleging deprivation of adequate exercise, plaintiff must show that the prison officials were deliberately indifferent to his exercise needs. *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 2323-24 (1991). "Courts in the Eighth Circuit have held that at least one hour of exercise outside the cell each day is required in order to comply with the eighth amendment." *Andrews v. Gunter*, 1987 WL 54372, *3 (D.Neb.1987) (citing *Hutchings v. Corum,* 501 F.Supp. 1276, 1294 (W.D. Mo.1980); *Campbell,* 623 F.2d at 507)).

A failure to provide gym equipment does not meet the deliberate indifference test enunciated in *Estelle*. 429 U.S. 97, 106, 97 S.Ct. 285, 292 . Nor does the lack of such recreation constitute an unlawful condition of confinement. *Anderson v. Coughlin*, 757 F.2d 33, 37 (2nd Cir. 1985) (lack of exercise equipment does not constitute cruel and unusual punishment); *see also Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399 (1981) (only those conditions depriving inmates of the "minimal civilized measure of life's necessities" constitute cruel and unusual punishment).

Plaintiff does not allege that he is denied adequate opportunity for exercise, only that there is a lack of gym equipment. Accordingly, plaintiff's claim as to lack of gym equipment should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

**2.  Citizen review committee.**

Plaintiff complains that there is no citizen review committee to address grievances. Lack of a citizen review committee at the jail implicates no constitutional right. The Court must afford jail officials a very great degree of discretion in the way they address institutional conditions. *Bell,* 441 U.S. at 539, 99 S.Ct. at 1874; *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963 (1974). A jail official's failure to address problems to the complete satisfaction of plaintiff, of a citizen review committee or even of this Court is not sufficient reason to interfere with such discretion. *See id.* No specific incident alleged by plaintiff leads this Court to conclude that conditions at the Cape Girardeau

County Jail are such that interference with jail officials' discretion by a citizen review committee is in any way necessary or desirable. Accordingly, plaintiff's complaint as to this issue does not survive review under § 1915(e)(2)(B) and should be dismissed.

### 3. Racial composition of staff and detainees.

Plaintiff alleges that the detainees at the jail are predominantly African-American and the staff is predominantly white. He asserts that this has led to a "Gestapo regime" where detainees are intimidated and tazed. Plaintiff has not alleged any incident which would evidence that he received disparate and unequal treatment because he is African-American or that disciplinary measures were taken against him that were racially motivated. It is questionable whether plaintiff has standing to raise a claim of discriminatory hiring practices. Moreover, hiring decisions depend in part on factors beyond the control of defendant, such as the available labor market. Lastly, there is no requirement that such hiring decisions be based on the racial composition of the jail. Accordingly, plaintiff's complaint as to this issue does not survive review under § 1915(e)(2)(B) and should be dismissed.

### 4. Hours on lockdown and in the pod, and mass punishments.

Plaintiff alleges that he is locked down in his room from 7:00 A. M. until 10:00 A. M. and from 12:00 P. M. until 4:00 P. M.; and he must remain out in the pod from 4:15 P. M. until 10:00 P. M. Plaintiff also alleges that, if one person commits an infraction, the entire pod loses privileges, including commissary and television privileges.

Plaintiff's claims implicate the type of challenge to the day-to-day administrative decisions of jail officials with which courts are ill-equipped to deal. *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800 (1974), *overruled on other grounds*, *Thornburgh v. Abbott*, 490 U.S. 401, 109 S.Ct.1874 (1989); *Klinger v. Department of Corrections*, 31 F.3d 727, 732 (8th Cir. 1994). As the Supreme Court recognized, "the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree." *Id.* at 404-05, 94 S.Ct.

at 1807. "Moreover, where state penal institutions are involved, federal courts have a further reason for deference to the appropriate prison authorities." *Id.* at 405, 94 S.Ct. at 1807.

The Court's scrutiny and analysis of the administrative decisions at issue subject such decisions to the type of second-guessing identified in *Martinez*, a role which, as the Court stated, courts are ill-equipped to play. Accordingly, plaintiff's complaint as to these issues does not survive review under § 1915(e)(2)(B) and should be dismissed.

### 5. Excessive cost of canteen items.

Plaintiff's allegation that canteen prices equal or exceed regular consumer prices fails to state a violation of plaintiff's constitutional rights. "Because the county provided for the plaintiff's basic necessities (food, shelter, clothing, medical care, etc.), he had no protected property or liberty interest in [canteen] privileges." *Poole v. Stubblefield*, 2005 WL 2290450, slip op. at *2 (E.D.Mo. 2005) (quoting *Bennett v. Sheahan,* 1999 WL 967534, *4 (N.D.Ill.1999)). Plaintiff cannot "reasonably contend that the Constitution embodies some right of a prisoner to purchase anything he wants from the [canteen] while in the custody of the state." *Robinson v. Illinois State Correctional Center (Stateville) Warden*, 890 F. Supp. 715, 718 (N.D.Ill.1995) (citing *Campbell v. Miller,* 787 F.2d 217, 222 (7th Cir.), *cert. denied,* 479 U.S. 1019, 107 S.Ct. 673 (1986). Plaintiff has no constitutionally protected interest in canteen privileges; accordingly, plaintiff's complaint as to this issue does not survive review under § 1915(e)(2)(B) and should be dismissed.

### 6. Lack of privacy.

Plaintiff alleges that the toilet that he must use is a one-room toilet open to the pod and that being forced to use the toilet in front of everyone violates his constitutional right to privacy. As stated above, for the conditions placed upon plaintiff to violate his due process rights, they must constitute punishment. *Bell,* 441 U.S. at 536-39. "Loss of freedom of choice and privacy are inherent incidents of confinement in such a facility. . . . [T]he detainee's understandable desire to live as comfortably as possible . . . does not convert the conditions or restrictions of detention into 'punishment.'" *Bell,* 441 U. S. at 537, 99 S.Ct. 1861, 1873.

Moreover, while plaintiff may very well retain some privacy rights when entering the jail, such rights must be balanced against the internal security needs of the jail. *See Timm v. Gunter*, 917 F.2d 1093, 1100 (8th Cir. 1990). The diminished privacy of which plaintiff complains has already been challenged in the context of pretrial detention and found not to survive constitutional review because it is reasonably related to such security needs, which are a legitimate government objective. *Id.* at 538-39. Accordingly, plaintiff's complaint as to this issue does not survive review under § 1915(e)(2)(B) and should be dismissed.

### 7. Visitation rights.

Plaintiff alleges that his visitation rights are restricted to fifteen minutes on the weekend only, that there is no contact during visitation and that only people with the same last name as plaintiff may visit, including mother, brothers, sisters and his own children. "Visitation is a privilege and within the correctional facility's province to administer as it sees fit." *Burke v. Rudnick*, 2000 WL 33339652, *3 (D.N.D. 2000). Moreover, an inmate has no constitutional right to contact visitation. *Harmon v. Auger* 768 F.2d 270, 273 (8th Cir. 1985) (citing *Block v. Rutherford,* 468 U.S. 576, 104 S.Ct. 3227 (1984)).

Thus, the Court finds that prohibiting contact visits and restricting visitation to weekends only are restrictions that are reasonably related to legitimate penological interests. However, the Court is concerned about plaintiff's allegations that visitation is restricted to fifteen minutes and that close relatives with a different last name cannot visit. This Court shares the concerns of the district court in *White Eagle v. Storie*, 456 F. Supp. 302 (D.Neb. 1978), that the conditions of visitation "are simultaneously fundamental to institutional security and to inmate morale." *White Eagle*, 456 F. Supp. at 305. "When the two are in conflict, the need for security is paramount; but the need must be supported by the evidence, and the doctrine of least necessary restraint requires, as a matter of due process that jail visiting conditions be curbed only to the extent needed to assure institutional security and administrative manageability." *Id*. (citing *Rhem v. Malcolm*, 371 F.Supp. 594, 625 (S.D.N.Y. 1974). Restricting visitation to fifteen minutes and restricting visitors to people

12

who share the detainee's last name may be warranted, but the Court will require defendant to respond to plaintiff's complaint and show that plaintiff's visitation rights are not unconstitutionally restricted. Accordingly, the Court finds that plaintiff's complaint as to this issue survives review under § 1915(e)(2)(B) and should not be dismissed at this time.

In accordance with the foregoing,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis [Doc. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial partial filing fee of $0.00 within thirty (30) days from the date of this order.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the complaint as to defendant Unknown Jordan.

An appropriate order of dismissal shall accompany this order and memorandum.

Dated this 16th day of November, 2005.

_____
**RODNEY W. SIPPEL**
**UNITED STATES DISTRICT JUDGE**